## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Biotel Inc., | ) | |
| | ) | Civil Action No. 0:09-cv-02013 (JMR/JJK) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **AMENDED COMPLAINT** |
| CardioNet, Inc., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Biotel Inc., for its Complaint against defendant CardioNet, Inc., states and alleges as follows:

### The Parties

1. Plaintiff Biotel Inc. ("Biotel") is a corporation incorporated under the laws of Minnesota with its principal place of business in Minnesota.

2. Defendant CardioNet, Inc. ("CardioNet") is a corporation incorporated under the laws of Delaware with its principal place of business in Pennsylvania.

### Jurisdiction And Venue

3. This action involves a dispute between citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds $75,000. Accordingly, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

4. A substantial part of the events or omissions giving rise to plaintiff Biotel's claim in this action occurred in this judicial district. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## Factual Basis For Claims

5.     Biotel entered into a Merger Agreement, dated April 1, 2009, with CardioNet pursuant to which Garden Merger Sub, Inc., ("Merger Sub") a wholly owned subsidiary of CardioNet, would be merged with and into Biotel.  A true and correct copy of the Merger Agreement is attached hereto as Exhibit No. 1.

6.     In essence, the Merger Agreement provides for and contemplates the following basic transaction:  On the effective date of the merger (the "Effective Date") (i) Merger Sub would be merged (the "Merger") with and into Biotel with Biotel being the surviving corporation in the Merger, and (ii) by virtue of the Merger, on the Effective Date of the Merger, (A) each outstanding share of common stock, $.01 par value (the "Shares"), of Biotel (other than the Shares of which dissenters' appraisal rights had been properly exercised) automatically would be cancelled and converted by operation of law into the right to receive $4.82 in cash (without interest and less applicable withholding of tax), and (B) each outstanding option to acquire shares of capital stock of Biotel (the "Options") automatically would be cancelled and converted into the right to receive a cash payment equal to the in-the-money value of the Options, in accordance with the provisions of Section 5.11 of the Merger Agreement (each such Option becoming fully vested and exercisable immediately prior to the Effective Date), and (C) Biotel would become a wholly owned subsidiary of CardioNet.

7.     Merger Sub is a corporation incorporated under the laws of Minnesota, which was established for purposes of the Merger.  Merger Sub is a party to the Merger Agreement.  Merger Sub is owned and controlled by defendant CardioNet.

2

8. The Merger Agreement required CardioNet to use its reasonable best efforts to take all actions and cooperate with Biotel in doing all things necessary to consummate and make effective the Merger.

9. In the Merger Agreement, Biotel agreed to do certain things required by CardioNet that would be harmful to Biotel's business without the Merger. In particular, CardioNet required Biotel to terminate certain relationships with Biotel's customers prior to the Effective Date. These requirements are listed in Exhibit C to the Merger Agreement.

10. CardioNet knew that Biotel's compliance with Exhibit C to the Merger Agreement would harm Biotel's business. In fact, Biotel reinforced to CardioNet the importance of closing the Merger given the steps Biotel was required to take pursuant to Exhibit C.

11. The Effective Date for the closing of the Merger Agreement was scheduled to occur on July 15, 2009, immediately following a special meeting of the shareholders of Biotel called to approve the Merger.

12. Biotel honored and performed its requirements and obligations under the Merger Agreement. Biotel was ready, willing and able to perform pursuant to the terms of the Merger Agreement.

13. In a letter dated July 14, 2009, CardioNet notified Biotel of CardioNet's purported termination and abandonment of the Merger Agreement. A true and correct copy of the CardioNet letter is attached hereto as Exhibit No. 2.

14. CardioNet's purported termination and abandonment of the Merger Agreement is based on the allegation that Biotel breached "Section 5.1(c) of the Merger Agreement in respect of covenant numbered 2 on Exhibit C to the Merger Agreement."

15. The requirement on Exhibit C in question required Biotel to formally withdraw and terminate, in writing, a certain distribution arrangement offered to a particular company. In fact, Biotel provided the notice required to be given in accordance with paragraph 2 of Exhibit C to the Merger Agreement. A true and correct copy of the notice Biotel provided is attached hereto as Exhibit No. 3.

16. CardioNet failed to close the Merger pursuant to the terms of the Merger Agreement on July 15, 2009, and CardioNet has failed to perform pursuant to the terms of the Merger Agreement.

17. CardioNet's termination and abandonment of the Merger Agreement is causing and will continue to cause irreparable harm to Biotel. Biotel is being deprived of a unique business opportunity. Moreover, in reliance on CardioNet's agreement to use its best efforts to consummate the Merger, Biotel took actions required by the Merger Agreement that have harmed and will continue to harm its business. Specifically, Biotel was required by CardioNet to terminate certain customer relationships.

18. The Merger Agreement expressly recognizes that a breach would cause irreparable damage and that the non-breaching party is entitled to injunctive relief to prevent breaches of the Agreement and to enforce specifically the terms of the Agreement.

19. Biotel initially commenced this action in Hennepin County District Court, State of Minnesota, and named Merger Sub as a defendant. CardioNet filed a Notice of Removal to this Court on August 3, 2009.

20. According to CardioNet's allegations in its Notice of Removal to this Court, Merger Sub does not conduct any business, it therefore does not have a principal place of business, and it does not need to be and it is not a necessary party to this action.

21.     If the Court determines that CardioNet has breached the Merger Agreement, Merger Sub's presence in this action will not be necessary in order for the Court to accord complete relief to Biotel.

### Claims:  Breach of Contract

22.     The Merger Agreement is a valid, binding, and enforceable contract.

23.     CardioNet's notice of its termination and abandonment of the Merger Agreement demonstrates a definite intention to breach the terms of the Merger Agreement.

24.     CardioNet has failed to use its reasonable best efforts to consummate and make effective the Merger.

25.     No basis in fact or in law existed or exists to support or justify CardioNet's purported termination and abandonment of the Merger Agreement.  Biotel provided the notice required to be given in accordance with paragraph 2 of Exhibit C to the Merger Agreement referred to in the CardioNet letter.

26.     CardioNet has breached and is in breach of the Merger Agreement and its terms.

27.     Section 8.5 of the Merger Agreement provides that in the event any of the provisions are not performed in accordance with the terms of the Agreement, or in the event of a breach of the Agreement, the parties shall be entitled to specific performance of the Agreement, in addition to any other remedy at law or in equity.

28.     Further, by reason of CardioNet's failure to perform pursuant to the Merger Agreement, and its breach of the Merger Agreement, Biotel has sustained damages in an amount greater than $75,000.00, exclusive of interest and costs.

## Demand for Relief

Plaintiff, Biotel Inc., requests and demands the following relief:

a. The equitable remedy of specific performance as provided in Section 8.5 of the Merger Agreement.

b. In the event that this Court should determine that the remedy of specific performance is not available to plaintiff Biotel, compensatory damages in an amount to be proven at trial.

c. Reasonable costs and attorneys' fees.

d. Such other relief that this Court deems appropriate.


Dated: August 10, 2009

GRAY, PLANT, MOOTY,
  MOOTY & BENNETT, P.A.


By      s/Michael R. Cunningham
        Michael R. Cunningham (MN #20424)
        Dean C. Eyler (MN #267491)
        Sitso W. Bediako (MN #0389073)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-3796
Telephone: (612) 632-3000
Facsimile: (612) 632-4444

ATTORNEYS FOR PLAINTIFF BIOTEL INC.

GP:2624878 v1